# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION NO. 08-137-1** |
| v. | |
| **ROBERT PENNINGTON** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                       **May 16, 2022**

        In December of 2010, Defendant Robert Pennington was convicted by a jury on sixteen charged counts related to his role as the gunman in seven separate armed robberies and one attempted armed robbery of delivery drivers in Reading, Pennsylvania, between December 27, 2007, and February 4, 2008.[1] Seven of the counts were for using and carrying a gun during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). He was 20 years old at the time of the robberies.

        At the time of Pennington's sentencing, 18 U.S.C. § 924(c) treated multiple charges in a single indictment as successive counts for the purposes of applying certain repeat offender sentencing enhancements. The statute required a mandatory sentence of 84 months on the first § 924(c) charge, and mandatory consecutive 300-month terms on each of the six other § 924(c)

---

[1] Superseding Indictment [Doc. No. 82]; Jury Verdict [Doc. No. 213]; J&C [Doc. No. 234]. The case was previously assigned to the docket of the Honorable James Knoll Gardner, who presided over the trial and sentencing and entered the judgment of conviction.

charges.[2] Therefore, on August 25, 2011, Judge Gardner imposed the minimum mandatory sentence of 158 years in prison—an effective life sentence.[3]

Today, under the same statute, as amended by the First Step Act of 2018, charges in the same indictment are not subject to 300-month mandatory minimums "unless the defendant has already been convicted of a section 924(c) charge at the time of the subsequent offense(s)."[4] In other words, if Pennington were sentenced today on the same charges, he would be subject to a mandatory minimum consecutive sentence of 84 months on each of the seven § 924(c) charges, for a total sentence of 49 years.[5] The First Step Act's amendments to mandatory minimums under § 924(c) are not retroactive.[6]

Pennington filed a *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). This motion was stayed pending appellate litigation in the Third Circuit and Supreme Court, and Pennington recently moved to lift the stay. For the reasons stated below, Pennington's motion to lift the stay will be granted as to the motion for compassionate release, and his motion for compassionate release will be denied.

### I.   MOTION TO LIFT STAY

In October of 2020, Pennington filed a Motion Seeking Compassionate Release, which pleads intertwined medical and non-medical justifications for compassionate release. The non-

---

[2] 18 U.S.C. § 924(c)(1)(C) (2006) (*amended by* 18 U.S.C. First Step Act of 2018 (the "First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194).

[3] J&C [Doc. No. 234] at 2.

[4] *United States v. Bledsoe*, 2022 WL 1261740, at *3 (E.D. Pa. Apr. 28, 2022).

[5] 18 U.S.C. § 924(c)(1)(A)(ii).

[6] "In passing the First Step Act, Congress specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced." *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022).

medical justifications invoke issues that are also raised in Pennington's separate motion for relief under 28 U.S.C. § 2255.[7] In particular, Pennington's Motion Seeking Compassionate Release challenged the disparity between Pennington's sentence and sentences currently prescribed by 18 U.S.C. § 924(c), as modified by the First Step Act.[8]

At the time of Petitioner's motion, the law surrounding sentencing enhancements and mandatory minimums under 18 U.S.C. § 924 was the subject of significant appellate litigation. As a result, Pennington's Motion Seeking Compassionate Release and his § 2255 petition were each stayed pending the decision of the United States Supreme Court in *United States v. Taylor*.[9] *Taylor* was argued on December 7, 2021, and the Supreme Court's decision in this case remains pending.

Petitioner has moved to lift the stay surrounding his motion for compassionate release.[10] Although *Taylor* remains pending, the Third Circuit has since decided *United States v. Andrews*, which directly addressed motions for compassionate release based on the First Step Act's amendment of § 924(c).[11] On April 4, 2022, the Supreme Court denied certiorari in *Andrews*, and it remains controlling law in this Circuit.[12] As *Andrews* is directly relevant to the non-medical

---

[7] Mot. 28 U.S.C. § 2255 [Doc. No. 250].

[8] Mot. Seeking Compassionate Release [Doc. No. 271] at ECF page 6–7, 9–10.

[9] *See* Order Sept. 3, 2021 [Doc. No. 277].

[10] This motion was previously dismissed by the Court, based on an understanding that Pennington was represented by the Federal Community Defender's Office for the Eastern District of Pennsylvania ("FCDO") for the purposes of his motion for compassionate release. However, the FCDO has notified the Court that this motion is outside the scope of its assigned representation. *See* Status Report [Doc. No. 280].

As the Court's Order of March 31, 2022, was based on a belief that the FCDO was representing Defendant in his motion for compassionate release, the Court may reconsider its order dismissing Defendant's motion *sua sponte* and without notice to the parties pursuant to Federal Rule of Civil Procedure 60(a).

[11] *Andrews*, 12 F.4th at 255.

[12] *Andrews*, 142 S. Ct. at 1446.

arguments raised by Pennington, and as the Supreme Court has recently denied certiorari, the Court will lift the stay as to the motion for compassionate release and decide it on the merits.

## II. MOTION FOR COMPASSIONATE RELEASE

### A. Legal Standard

"A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35."[13] One statute that permits such modifications is 18 U.S.C. § 3582(c)(1)(A)(i), which, as amended by the First Step Act, allows "prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf."[14] Once a defendant has satisfied the exhaustion requirement, the court may reduce a term of imprisonment based on a finding that "the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission';[15] and (3) supported by the traditional sentencing factors

---

[13] *United States v. Van Sickle*, No. 18-250, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (citing *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003)).

[14] *United States v. Hill*, No. 19-38, 2020 WL 2542725, at *1 (D. Conn. May 19, 2020) (citing *United States v. Almontes*, No. 05-58, 2020 WL 1812713, at *1 (D. Conn. April 9, 2020)).

[15] While any sentence reductions under § 3582 (c)(1)(A) must be "consistent with applicable policy statements issued by the Sentencing Commission," the existing policy statement issued by the Sentencing Commission is "not applicable—and not binding—for courts considering prisoner-initiated motions." *Andrews*, 12 F.4th at 259; 18 U.S.C. § 3582 (c)(1)(A).

Nevertheless, District Courts may "consult[] . . . the [Sentencing Commission's] policy statement to form a working definition of 'extraordinary and compelling reasons.'" *Andrews*, 12 F.4th at 260.

under 18 U.S.C. § 3553(a), to the extent they are applicable."[16] The defendant bears the burden of showing that relief is warranted.[17]

### B. Discussion

#### 1. Exhaustion

Pennington appears to have satisfied the exhaustion requirement. Under 18 U.S.C. § 3582, as modified by the First Step Act of 2018, a prisoner may seek compassionate release either (1) "upon motion of the Director of the Bureau of Prisons;" or (2) upon motion of the defendant, after (a) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf;" or (b) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[18] Pennington asserts that an Administrative Remedy Request was transmitted to the Warden of USP Coleman II on July 9, 2020, that this request was denied on August 7, 2020, and that an appeal of that denial that Pennington filed on August 17, 2020, had not been answered when Pennington moved for relief in this Court, more than 30 days after his initial administrative request. He has attached documentation supporting these assertions, and the government does not challenge Pennington's exhaustion.[19] As the exhaustion requirement is satisfied, the Court may address the merits of Pennington's motion.

---

[16] *Andrews*, 12 F.4th at 258 (quoting 18 U.S.C. § 3582(c)(1)(A)).

[17] *See United States v. Sellers*, No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020); *United States v. Resnick*, No. 14-810, 2020 WL 1651508, at *3 (S.D.N.Y. Apr. 2, 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992); *United States v. Clarke*, No. 09-705, 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010)).

[18] 18 U.S.C. § 3582(c)(1)(A).

[19] *See* Mot. Seeking Compassionate Release [Doc. No. 271] at ECF pages 4, 13–15.

*2. Extraordinary and Compelling Reasons Warranting a Reduction*

Pennington presents two justifications that he categorizes as "extraordinary and compelling reasons" for compassionate release. First, Pennington argues that his sentence "is incorrect due to incorrect [§] 924(c) stacking" and that the "cumulative effect" of this stacking raises "'fundamental fairness' concerns which equate to [an] 'extraordinary and compelling' reason" for a reduction of his sentence.[20] Next, Pennington claims that he is a "a chronic care inmate . . . with [a] history of underlying conditions (asthma, etc.)," and that several people he knew in prison had died of COVID-19.[21] Although Pennington notes that the Bureau of Prisons had put in place some measures that "'in theory' allowed for some social distancing and lessened the possibility of non-infected inmates [contracting] the COVID-19 virus," he argues that "[t]hese measures . . . were made completely ineffective by . . . staff members who refused to wear protective face coverings," and claims that a number of inmate work assignments, including his own assignment cleaning the quarantine unit, increased the risk of COVID-19 transmission.[22]

Pennington's non-medical arguments do not present "extraordinary and compelling" reasons for compassionate relief. Although the statute under which Pennington was sentenced was modified to provide for significantly lower minimum sentences, the Third Circuit has held that "[t]he nonretroactive changes to the § 924(c) mandatory minimums . . . cannot be [an extraordinary and compelling] basis for compassionate release."[23] To the extent that Pennington

---

[20] Mot. Seeking Compassionate Release [Doc. No. 271] at ECF page 6 (emphasis omitted).

[21] Mot. Seeking Compassionate Release [Doc. No. 271] at ECF page 2.

[22] Mot. Seeking Compassionate Release [Doc. No. 271] at ECF pages 2–3.

[23] *Andrews*, 12 F.4th at 261. While *Andrews* allows district courts to consider sentencing disparities "when they weigh the § 3553(a) [sentencing] factors," sentencing disparities caused by the nonretroactive provisions of the First

argues that his sentence is "incorrect," and challenges the validity of his sentence, that challenge has been asserted in his pending counseled § 2255 petition; it cannot be considered in a motion for compassionate relief.[24]

Pennington's claim that the risk of COVID-19 infection has transformed his incarceration into "a death sentence," must be evaluated in light of his particular medical circumstances.[25] "[I]t is difficult to overstate the severity of the COVID-19 outbreak and the global crisis that society is facing in light of this unprecedented public health crisis."[26] Earlier in the pandemic, USP Coleman II, where Pennington is incarcerated, was severely impacted by COVID-19.[27] Medical conditions that increase susceptibility to a dangerous COVID-19 infection, if sufficiently severe, may present an extraordinary and compelling reason to grant a sentence reduction under § 3582(c)(1)(A).

However, the Third Circuit has explained that "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."[28] Even by the time of Defendant's motion, "the BOP [had] implemented adequate measures such that the number of

---

Step Act are not grounds for sentence reduction without a separate "extraordinary and compelling" reason to grant such relief. *Id.* at 262.

[24] "§ 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity." *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019).

[25] Mot. Seeking Compassionate Release [Doc. No. 271] at ECF page 6.

[26] *United States v. Cantatore*, No. 16-189, 2020 WL 2611536, at *3 (D.N.J. May 21, 2020).

[27] A significant percentage of inmates currently incarcerated at USP Coleman II have tested positive for COVID-19 at some point while in BOP custody. *See* BUREAU OF PRISONS, *COVID-19 Inmate Test Informations*, https://www.bop.gov/coronavirus/ (last visited May 13, 2022).

[28] *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020).

infections [was] significantly reduced at [USP Coleman II]."[29] Effective COVID-19 vaccines have become available, and the risk of COVID-19 at Coleman II has decreased significantly. According to the BOP's statistics, there is only one active case of COVID-19 at Coleman II as of the date of this order—a single infection among Coleman II's staff.[30]

Although Pennington asserts that his health conditions place him at severe risk should he contract COVID-19, the evidence before the Court does not support this conclusion. Pennington claims only that he has "chronic" medical conditions and that that he suffers from asthma.[31] However, the Bureau of Prisons records provided to the Court do not indicate that Pennington has been diagnosed with asthma. Instead, his records show that he is in generally good health, although he has had minor chronic health problems throughout his 14-year incarceration.[32] Pennington's medical records only show two conditions that increase his risk of a severe COVID-19 infection: obesity and a depressive disorder.[33] However, even before the widespread availability of COVID-19 vaccines, courts in this district regularly held that obesity and

---

[29] *United States v. Robertson*, No. 08-240, 2020 WL 7024887, at *4 (M.D. Fla. Nov. 30, 2020), *reconsideration denied*, No. 08-240, 2021 WL 2139070 (M.D. Fla. May 26, 2021).

[30] *See* BUREAU OF PRISONS, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited May 13, 2022).

In comparison, on December 10, 2020, the BOP reported that "one inmate and twenty-two staff members [had] active COVID-19 infections." *United States v. Whindleton*, No. 13-64, 2020 WL 7265844, at *1 (D. Me. Dec. 10, 2020) (citing public BOP test information as of December 10, 2020).

[31] Mot. Seeking Compassionate Release [Doc. No. 271] at ECF page 2.

[32] These chronic problems consist of relatively minor and common medical issues that have not been identified as COVID-19 risk factors. Medical Records [Doc. No. 274] at ECF pages 10–13, 18–21, 25, 31–33. Medical Records [Doc. No. 274] at ECF pages 10–13, 18–21, 25, 31–33.

[33] *See* Gov't Resp. [Doc. No. 273] at 16; Medical Records [Doc. No. 274] at ECF page 10, 32–33; CENTERS FOR DISEASE CONTROL AND PREVENTION, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html/ (last visited May 13, 2022).

depression in a younger person "fall short of presenting an extraordinary and compelling reason for his release."[34]

## III. CONCLUSION

Defendant Robert Pennington committed a series of armed robberies in the span of six weeks when he was 20 years old. For these crimes, he was sentenced to 158 years in prison—an undeniably harsh sentence, but the minimum required by the law at the time of his conviction. The law under which Pennington was sentenced has since been amended; if he were sentenced today, the mandatory minimum sentence would be significantly lower, but still substantial.

However, these facts do not permit the Court to grant Pennington the compassionate release he seeks. The Third Circuit has held that the sentencing disparities caused by amendments to the § 924(c) mandatory minimums cannot be treated as extraordinary or compelling reasons to grant relief. Pennington has not shown "that he suffers from serious medical conditions that would increase his risk of becoming seriously ill from COVID," and he has not established any other extraordinary and compelling reason that justify a reduction of his sentence.[35] Pennington's motion for compassionate release must be denied.

---

[34] *United States v. Whiteman*, No. 15-298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (finding that mild obesity and hypertension in a 42-year-old defendant did not establish extraordinary circumstances); *see also United States v. Williams*, No. 15-471-3, 2020 WL 4756743, at *2, *5–*6 (E.D. Pa. Aug. 17, 2020) (finding that mild asthma and obesity with a BMI of 31.5 are not extraordinary circumstances in the context of confinement at an institution that has not had a significant number of positive cases); *United States v. Moldover*, No. 14-637, 2020 WL 6731111, at *10 (E.D. Pa. Nov. 13, 2020) ("[D]epression, anxiety disorder, hyperlipidemia, and nerve damage . . . do not present extraordinary and compelling reasons" for a prisoner's compassionate release.)

Since the date of Pennington's filing, the CDC has categorized depressive disorder as a risk factor for severe COVID-19 infections. However, the increased COVID-19 risk caused by depressive disorder combined with obesity rarely creates extraordinary and compelling reasons for compassionate release. *See United States v. Ackerman*, No. 11-740, 2022 WL 1214172, at *3–*4 (E.D. Pa. Apr. 25, 2022) (finding that controlled hypertension, anxiety, and depression in a prisoner who was "mildly overweight" did not create extraordinary or compelling reasons for compassionate release).

[35] *See Bledsoe*, 2022 WL 1261740, at *5.